**In re Victor CAOLA, Debtor.**

No. 08–28385 (MBK).

United States Bankruptcy Court, D. New Jersey.

Jan. 6, 2010.

**14**

Joseph Albanese, Esq., Forked River, NJ, Attorney for the Debtor.

Albert Russo, Esq., Standing Chapter 13 Trustee, Robbinsville, NJ, Attorney for the Office of the Standing Chapter 13 Trustee.

### OPINION

MICHAEL B. KAPLAN, Bankruptcy Judge.

### INTRODUCTION

The essence of the dispute concerns the tension between two provisions of 11 U.S.C. § 1307, to wit, 11 U.S.C. § 1307(b) and (c), and how they apply to the Debtor's request to dismiss his pending Chapter 13 case. The standing Chapter 13 Trustee objects to dismissal, seeking instead conversion of the case to Chapter 7.

### JURISDICTION

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(b) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The statutory predicate for the relief sought herein is 11 U.S.C. § 1307.[1] The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr.P. 7052.[2]

### I. FACTS AND PROCEDURAL HISTORY

Prior to filing his petition under Chapter 13 of Title 11 of the United States Code, Debtor was engaged in the private practice of law in New Jersey. In 2007, two civil actions were filed against Debtor in the Superior Court of New Jersey (the "State Actions"). Thereafter, by deed dated October 17, 2007, and recorded December 4, 2007, Debtor and his wife, Sally Caola ("Sally"), transferred their joint interest in their marital residence (the "Property") to Sally, individually, for the purchase price of one dollar.

On the same day as the transfer of deed, Sally refinanced the Property by borrowing $309,067.00 and paying off the then-existing mortgage indebtedness of $197,130.64. As a result of these transactions, Sally received $101,049.18. On October 25, 2007, she deposited $61,149.18 into

---

**1.** Absent contrary indication, all "Code," chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 as amended by the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 ("BAPCPA"), Pub.L. 109–08, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" and "FRE" references are to the Federal Rules of Civil Procedure and the Federal Rules of Evidence, respectively.

**2.** To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

a personal savings account, with the remainder being placed into a Certificate of Deposit in her name only.

On September 25, 2008, Debtor filed his Chapter 13 petition. Under Schedule "A" filed with his petition, Debtor listed his residence, describing the nature of his interest in the property as "Fee Simple— 50% Interest with Non–Debtor Spouse— Conveying back to joint tenancy." He listed the fair market value of the property as $287,500.00, with a first mortgage lien of $310,617.00. Importantly, in section ten of the Statement of Financial Affairs filed in conjunction with the Petition, entitled "Other Transfers," Debtor listed "None."

On November 3, 2008, Debtor filed his Chapter 13 Plan, proposing to pay $100.00 per month for sixty months. As per the filed Schedules, Debtor's unsecured debt totaled $142,242.00, which sum excluded liabilities related to the State Actions, which were reported as "unknown." The Confirmation Hearing was originally scheduled for November 25, 2008, but after several adjournments, was rescheduled for August 4, 2009. The Chapter 13 Trustee objected to Confirmation on grounds related to Debtor's disposable income and good faith, pointing to the suspect transfer of Debtor's interest in the Property. The Trustee took the position that Debtor's transfer of his one-half interest in the Property was fraudulent transfer pursuant to 11 U.S.C. § 548.

As a result, an Evidentiary Hearing was scheduled for August 4, 2009. A Second Interim Order Regarding Confirmation entered on June 15, 2009, provided that on the adjourned date, "the case shall be confirmed, or the Parties shall show cause why Confirmation shall be denied or the case be dismissed or converted[.]" On August 4, 2009, Debtor's counsel appeared and stated that Debtor would not be appearing at the Evidentiary Hearing, would no longer prosecute Confirmation, and would move for a dismissal of the case. The Trustee objected, requesting that the case be converted to one under Chapter 7 of the Code. A hearing was held on November 24, 2009, regarding conversion or dismissal of the case, and the court reserved decision.

## II. *ANALYSIS*

The dispute highlights a potential conflict between two provisions of § 1307. Debtor argues that, pursuant to § 1307(b), he has an absolute right to voluntarily dismiss his Chapter 13 case at any time. That section provides:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court *shall* dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b) (emphasis added).

However, the Trustee argues that § 1307(c) serves as a limitation upon the Debtor's right to dismiss. Section 1307(c) reads:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. . . .

The Trustee alleges that the Debtor's pre-petition transfer of his one-half interest in the Property was made in bad faith, which is "cause" under § 1307(c), and as such, the Court should deny the Debtor's motion to dismiss and instead convert to a case under Chapter 7.[3] Accordingly, the issue

---

**3.** Section 1307(c) provides a nonexclusive list

of ten causes justifying "for cause" under that

before this Court is whether a Debtor's right to voluntarily dismiss is absolute or whether it is subject to review for bad faith.

Prior to the Supreme Court's ruling in *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), various courts addressed this issue, some holding that a Chapter 13 debtor's right to dismiss is absolute, and others finding that § 1307(c) serves as a limitation on that right upon a showing of bad faith. Of those that upheld the right to dismiss as absolute, courts generally looked at the plain meaning of the language and focused on the use of "shall" in § 1307(b), as opposed to the permissive "may" in § 1307(c), finding the language "mandatory and leav[ing] no room for the exercise of discretion by the trial court." *Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, 619 (2d Cir.1999); *see also Zeman v. Dulaney (In re Dulaney)*, 285 B.R. 10, 14 (D.Colo.2002) (using "traditional tools of statutory interpretation" to conclude that "a debtor has an absolute right to dismissal" under § 1307(b)); *In re Greenberg*, 200 B.R. 763, 766 (Bankr. S.D.N.Y.1996).

These courts found the only limitation on the right to dismiss to be the language of § 1307(b) itself, which mandates dismissal on request of the debtor providing the case previously had not been converted under §§ 706, 1112, or 1208. *Barbieri*, 199 F.3d at 619. Moreover, courts noted "the intention of Congress to create an entirely voluntary chapter of the Bankruptcy Code." *Id.* at 620; *Dulaney*, 285 B.R. at 14. Accordingly, they concluded that, "[w]hen a court is presented with compet-

ing § 1307(b) and § 1307(c) motions[,] the normal usage of the words should control; the court must dismiss the Chapter 13 case." *Id.*

Other courts took a contrasting position on the issue. Rather than "viewing one subsection [of the Code] in isolation," these courts focused on the "broad purpose" of the Code to conclude that § 1307(c) "curtails a Chapter 13 debtor's right to voluntary dismissal." *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220 (8th Cir.1996); *In re Cobb*, 2000 WL 17840, at *2, 2000 U.S. Dist. LEXIS 198, 2000 WL 17840, at *5–6 (E.D.La. Jan. 11, 2000). "The concern of these courts [was] that an absolute right to dismiss in face of allegations of fraud and bad faith [would] encourage abuse of the bankruptcy systems by dishonest individuals who are misusing the system." *In re Fonke*, 310 B.R. 809, 813 (Bankr.S.D.Tex.2004). As the *Molitor* Court noted, "we are mindful that the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Molitor*, 76 F.3d at 220.

In 2007, the Supreme Court ruled on a similar issue in *Marrama*: whether, pursuant to § 706(c), a debtor has the "unqualified right of conversion" from a Chapter 7 case to Chapter 13 in face of allegations of bad faith conduct. *Marrama*, 549 U.S. at 371–72, 127 S.Ct. 1105. In *Marrama*, the debtor concealed a principal asset from creditors by filing "misleading or inaccurate" schedules attached to his petition. *Id.* at 368, 127 S.Ct. 1105. When the trustee informed the debtor that he intended to recover the property as an asset of the estate, the debtor

---

section. Although "bad faith" is not specifically identified on that list, "[b]ankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly

authorized by the words 'for cause.'" *Marrama v. Citizens Bank of Massachusetts (In re Marrama)*, 549 U.S. 365, 373, 127 S.Ct. 1105, 1110–11, 166 L.Ed.2d 956, 965–66 (2007).

moved to convert the case to Chapter 13. *Id.* at 368–69, 127 S.Ct. 1105. The trustee and a creditor filed objections contending that the conversion request "was made in bad faith and would constitute an abuse of the bankruptcy process." *Id.* at 369, 127 S.Ct. 1105. At the hearing on the conversion issue, the Bankruptcy Judge rejected the debtor's arguments of inadvertent mistake and denied the request for conversion. *Id.* at 369–70, 127 S.Ct. 1105.

On appeal, the debtor argued "that he had an absolute right to convert his case from Chapter 7 to Chapter 13 under the plain language of § 706(a) of the Code." *Id.* at 370, 127 S.Ct. 1105. Section 706 provides:

> (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

> (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Examining the content of the subsections as well as the relevant legislative history which characterized the right of conversion as a "one-time absolute right," the Court reasoned that the reference to an " 'absolute right' of conversion" was "more equivocal" than the debtor suggested. *Id.* at 371–72, 127 S.Ct. 1105.

> [T]he broad description of the right as "absolute" fails to give full effect to the express limitation in subsection (d). The words "unless the debtor may be a debtor under such chapter" expressly conditioned [the debtor's] right to convert on his ability to qualify as a "debtor" under Chapter 13.

> *Id.* at 372, 127 S.Ct. 1105.

Therefore, because it was already limited by subsection (d), the Court determined that the right could not be absolute.

Accordingly, the Court looked to § 1037(c) to determine whether the debtor was qualified to become a debtor under Chapter 13. It found that, in effect, "a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Id.* at 373–74, 127 S.Ct. 1105. As such, the debtor was not an individual for which "bankruptcy laws were enacted to protect." *Id.* at 374, 127 S.Ct. 1105. Moreover, the Court found that, notwithstanding the language of § 706 or § 1037(c), § 105(a) grants bankruptcy judges "broad authority" to take necessary and appropriate actions "to prevent an abuse of process," which, alone, would have been adequate to defeat the debtor's motion to convert. *Id.* at 375, 127 S.Ct. 1105.

> Nothing in the text of either § 706 or § 1037(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.

> . . . .

> Indeed, ... even if § 105(a) had not been enacted, the inherent power of every federal court to sanction "abusive litigation practices," see *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), might well provide an adequate justification for a prompt, rather than a delayed,

ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13. *Id.* at 374–76, 127 S.Ct. 1105.

For those reasons, the Court affirmed the denial of the debtor's motion to convert.

Post-*Marrama,* several courts have applied the Supreme Court's reasoning to the conflict between a debtor's right to voluntarily dismiss under § 1307(b) and the court's ability to convert the case "for cause" under § 1307(c). For example, in 2008, the Court in *Rosson v. Fitzgerald (In re Rosson),* 545 F.3d 764, 767 (9th Cir.2008), concluded that, after *Marrama,* "a debtor's right to voluntarily dismiss a Chapter 13 case under § 1307(b) *is* not absolute, but is qualified by an implied exception for bad-faith conduct or abuse of the bankruptcy process." (Emphasis in original). Although *Marrama* examined § 706(a), as opposed to § 1307(b), the Ninth Circuit cited to *Croston v. Davis (In re Croston),* 313 B.R. 447 (9th Cir. BAP 2004), abrogated on other grounds by *Marrama,* 549 U.S. at 365, 127 S.Ct. 1105, for the proposition that the two statutes are "analytically indistinguishable" insofar as the pertinent language in both statutes is essentially identical: § 706(a) reading, "Any waiver of the right to convert a case under this subsection is unenforceable"; and § 1307(b) providing, "Any waiver of the right to dismiss under this subsection is unenforceable." *Rosson,* 545 F.3d at 772–73. Thus, despite the permissive language of § 706(a) and mandatory language of § 1307(b), it found the universally applicable principal established by *Marrama* to be "that even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Id.* at 773, n. 12.

Most recently, the Bankruptcy Court for the Eastern District of New York applied the *Marrama* reasoning in holding that "a debtor does not have an absolute right to dismiss a [C]hapter 13 case when there is a finding by the Court of bad faith conduct by the debtor during the bankruptcy case." *In re Armstrong,* 408 B.R. 559, 560 (Bankr.E.D.N.Y.2009). In doing so, the Court noted that "the Second Circuit's decision in *Barbieri* [was] no longer good law." *Id.* at 569.

In *Armstrong,* the debtor allegedly "entered into a post-petition contract to sell [a piece of property] for $1.5 million without seeking the permission of the [t]rustee or the authority of the Court." *Id.* at 560. The debtor moved for dismissal pursuant to § 1307(b), but the trustee objected, contending that conversion was proper due to the debtor's bad faith. *Id.* The debtor, however, argued that she had not acted in bad faith, but instead, during the course of the bankruptcy proceeding, "she determined that she would not continue with her [C]hapter 13 case because her combined household projected disposable income would not be enough to support both post-petition mortgage payments and the [C]hapter 13 plan payments." *Id.* at 561. She contended that she informed her attorney of her desire to dismiss the case prior to marketing the property for sale. *Id.* at 561–62.

Following the reasoning of *Marrama,* the Court found that "[s]ection 1307 should not be used as an 'escape hatch' to provide a debtor with immunity from [her] conduct and avoid the consequences of section 1307(c) and the requirement that all debtors must play by the rules." *Id.* at 560.

[S]ection 1307(b) should not necessarily trump section 1307(c) when allegations of bad faith conduct have been made because such a ruling would remove the ability of this Court to remedy abuses of the chapter 13 process. Rather, under the Supreme Court's holding in *Marrama,* subsections (b) and (c) should be

read *in para materia* and bankruptcy courts should retain the ability to grant relief under subsection (c) in appropriate circumstances despite a [C]hapter 13 debtor's wish to exit the bankruptcy forum.

*Id.* at 570.

As to *Marrama's* critics, the Court noted that "[t]he notion of [C]hapter 13 as the 'purely voluntary' chapter of the Bankruptcy Code ... has been extended far beyond its intended meaning." *Id.* Although it agreed that debtors should not be forced into or compelled to remain in Chapter 13 involuntarily, it found "no indication in the legislative history to support the notion that a [C]hapter 13 debtor can abuse the bankruptcy process and *not* be held accountable." *Id.* at 570–71 (emphasis in original).

A review of the legislative history lends no support for the proposition that this Court should not be permitted to avail itself of the full breadth of the Bankruptcy Code to ensure the integrity of the process. This includes forcing a bad faith [C]hapter 13 debtor into a [C]hapter 7 without his consent. The result is consistent with the Supreme Court's decision in *Marrama*, and does not violate the *thirteenth amendment's* prohibition against involuntary servitude because in a [C]hapter 7 a debtor does not commit post-petition wages to repay creditors. *Id.* at 571.

Lastly, the Court reiterated *Marrama's* declaration that the anti-waiver provisions of § 706(a) and § 1307(b) do not serve to limit the court's authority to remedy situations of bad faith:

[A] statutory provision protecting a borrower from waiver is not a shield against forfeiture. Nothing in the text of either § 706(a) *or 1307(b)* limits the authority of the court to take appropriate action in response to fraudulent con-

duct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.

*Id.* (quoting *Marrama*, 549 U.S. at 374, 127 S.Ct. 1105) (emphasis in original).

The Armstrong Court found that, "[b]y the [Supreme] Court's express reference to section 1307 and by virtue of the fact that section 1307(b) contains identical anti-waiver language, the *Marrama* reasoning can and should lead to the conclusion that a [C]hapter 13 debtor can forfeit his absolute right to dismiss by engaging in fraudulent conduct." *Id.*

Although the *Armstrong* Court held that a debtor's right to voluntarily dismiss is not absolute in light of allegations of bad faith, unlike other previously cited cases, it did not *sua sponte* convert the debtor's case to one under Chapter 7. Instead, the Court concluded that the record was "not sufficiently developed for [it] to make any finding as to bad faith." *Id.* at 572. Accordingly, the Court scheduled an evidentiary hearing to determine whether the debtor engaged in bad faith conduct warranting conversion rather than dismissal. *Id.*

Since *Marrama*, bankruptcy courts across the country continue to be divided on the issue. While many follow the reasoning of *Rosson* and *Armstrong*, see *In re Letterese*, 397 B.R. 507 (Bankr.S.D.Fla. 2008), *In re Norsworthy*, 2009 Bankr.LEXIS 1381, at *4 (Bankr.N.D.Ga. May 27, 2009), and *In re Chabot*, 411 B.R. 685, 700 (Bankr.D.Mont.2009), others follow the pre-*Marrama* analysis of *Barbieri*. For example, the Northern District of Texas Bankruptcy Court took a plain reading of § 1307(b) to conclude that a debtor has an absolute right to dismiss. *In re Polly*, 392 B.R. 236, 246 (Bankr.N.D.Tex.2008). The Court contended that *Marrama* supports that holding because § 706(a) uses the per-

missive "may" while § 1307(b) contains the word "shall." *Id.* Similarly, the Northern District of West Virginia Bankruptcy Court found that "allowing a debtor an absolute right to dismiss a Chapter 13 case under § 1307 is consonant with the voluntary nature of Chapter 13, and with the ability of the court to address bad faith conduct using tools other than § 1307(c)." *In re Campbell*, 2007 WL 4553596, at *4, 2007 Bankr.LEXIS 4159, at *12 (Bankr. N.D.W.V. Dec. 18, 2007). It opined "that using § 105(a) to overcome the express wording of § 1307(b) is an inappropriate use of the court's inherent equitable power." *Id.*; *see also In re Davis*, 2007 WL 1468681, 2007 Bankr.LEXIS 1751 (Bankr. M.D.Fla. May 16, 2007).

### III. *DISCUSSION*

■ Like *Armstrong* and *Rosson*, this Court, too, finds *Marrama* instructive and holds that a debtor's right to dismiss is not absolute when there has been a showing of bad faith conduct. Simply put, "[t]o allow [a debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses." *In re Molitor*, 76 F.3d at 220. This Court, unshackled by pre-*Marrama* circuit precedent such as *Barbieri*, adopts the exhaustive and well-reasoned analysis undertaken by Judge Grossman in *Armstrong*.

However, that is not to say that there indeed has been a showing of bad faith in this case. Although the Supreme Court declined to articulate what conduct qualifies as "bad faith," it instructed that the behavior must be "atypical." *Marrama*, 549 U.S. at 375, n. 11, 127 S.Ct. 1105. In

the cases cited by the Trustee, where the debtors' motions for dismissal or conversion were denied on grounds of bad faith conduct, the courts found that the debtors committed clear acts of fraud or similar atypical conduct. *See Rosson*, 545 F.3d at 774 (where the debtor knowingly defied a Bankruptcy Court order directing the turnover of arbitration proceeds to the trustee and instead used the funds to remodel his home); *Marrama*, 549 U.S. at 369–70, 127 S.Ct. 1105 (denying the debtor's motion to convert when he filed misleading schedules to conceal assets from his creditors).

Conversely, here, as in *Armstrong*, the issue of Debtor's bad faith in transferring his interest in the Property has yet to be addressed. In fact, the debtor vehemently denies allegations of wrongdoing and contends that he has been honest and forthcoming in providing all relevant information requested by the trustee. *Contra Molitor*, 76 F.3d at 220 (denying the debtor's motion to dismiss and converting the case to Chapter 7 because the debtor "failed to offer any defense whatsoever to the [plaintiffs'] allegations of bad faith"). He insists that transfer of his interest in the Property was a "requirement imposed by the lender as a condition of refinancing." Moreover, Debtor contends that the proceeds of the refinance transferred to Sally have been depleted as part of their day-to-day living requirements.[4] Because these defenses have yet to be explored by the Court, we follow *Armstrong* in reserving decision pending an evidentiary hearing on the matter. *See also In re Norsworthy*, 2009 Bankr.LEXIS 1381, at *4 (Bankr.N.D.Ga. May 27, 2009) (holding an evidentiary hearing "to determine whether

---

4. To the extent it may be established that such proceeds in fact remain intact, this Court is left with the task of determining whether the Debtor's transfer of the funds to his spouse,

and her retention of the money while the Debtor incurred significant debt, constitute such bad faith conduct as to warrant conversion of the case.

the [d]ebtor's conduct rises to such a level that would permit the Court to exercise its limited discretion to deny the [d]ebtor's request to dismiss the case and, instead, convert the case").

## IV. CONCLUSION

For the foregoing reasons, the Court finds that a debtor does not have an absolute right to dismissal under § 1307(b) when facing allegations of bad faith conduct. Accordingly, the Court reserves decision pending an evidentiary hearing to determine whether the Debtor acted in bad faith when he transferred his one-half interest in the Property to his wife and allowed her to retain all of the refinance proceeds.