FILED

JUN 3 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CHUAN MIN CHANG and CHIU CHUAN WANG,<br>　　　　　　　Debtors. | BAP No. NC-20-1274-BSG<br><br>Bk. No. 19-51152-MEH |
| CHIU CHUAN WANG,<br>　　　　　Appellant,<br>v.<br>JAMES HWANG; DEBRA WU,<br>　　　　　Appellees. | **MEMORANDUM**[1] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
M. Elaine Hammond, Bankruptcy Judge, Presiding

Before: BRAND, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chiu Chuan Wang ("Alice")[2] appeals an order converting her and Jack's

chapter 13[3] case to chapter 7 under § 1307(c).[4] The bankruptcy court

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[2] For clarity, we refer to debtors Mr. Chuan Min Chang and Ms. Chiu Chuan Wang by their American first names – Jack and Alice. We refer to Alice's daughter Ms. Chialo Wang as Carol and to Alice's son Mr. Daniel Wang as Daniel. No disrespect is intended.

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules

1

determined that Jack and Alice had filed their petition in bad faith due to some prepetition property transfers, conduct surrounding their homestead exemption, the hiding of assets, and the timing of the bankruptcy filing. Seeing no error by the bankruptcy court, we AFFIRM.

## FACTS

### A. Prepetition events

#### 1. State court litigation

Jack, a licensed contractor, and Alice, a retired food service worker, sold a home to appellees James Hwang and Debra Wu ("Creditors") in 2011. Creditors later discovered defects in the home which caused damages in excess of $100,000. In late 2016, Creditors sent a construction defect notice to Jack and a mediation demand to Jack and Alice.

In February 2017, Creditors filed suit against Jack and Alice over the home defects. Creditors prevailed in binding arbitration and were awarded close to $177,000 for damages and attorney's fees. At a hearing on June 6, 2019, the state court orally granted Creditors' petition to confirm the arbitration award and ordered them to submit a written order and judgment. About 90 minutes later, Jack and Alice filed for bankruptcy.

#### 2. Prepetition property transfers

In or about 2013, Alice purchased a four bedroom rental home in Patterson, California as her sole and separate property (the "Property"). In January 2017, Alice transferred a 50% interest in the Property to her daughter,

of Bankruptcy Procedure.

2

Carol, for no consideration. In June 2018, Alice transferred her remaining 50% interest in the Property to Carol for no consideration. In April 2019, Carol transferred her 100% interest in the Property back to Alice for no consideration. Neither Alice nor Carol explained the reason for these multiple transfers, but the transfers all took place during Jack and Alice's state court litigation with Creditors.

## B. Postpetition events

In their joint chapter 13 petition filed on June 6, 2019, Jack listed his address as an apartment in San Jose; Alice listed her address as the Property. Jack and Alice claimed a homestead exemption of $170,350 for the Property, which they valued at $367,655. The Property was subject to a lien of $185,000. In addition to $1,200 from social security, Alice represented in Schedule I that she received monthly rental income of $1,800 from the Property. An amended Schedule I was filed in August 2019, reducing the monthly rental income to $1,000. Jack and Alice each filed a Schedule J to reflect their separate monthly household expenses.

In their chapter 13 plan, Jack and Alice proposed to make 60 monthly plan payments of $1,375 and to provide a 20% dividend to unsecured creditors. Monthly mortgage payments of $1,624.39 for the Property would be paid outside of the plan. Creditors argued that the proposed plan was infeasible given Jack and Alice's income. No plan was ever confirmed.

Jack later moved to be dismissed from the chapter 13 case under

---

[4] Jack has not appealed the order converting the case to chapter 7.

§ 1307(b). Creditors opposed Jack's individual dismissal and filed a cross-motion to convert the entire case to chapter 7 under § 1307(c).

Creditors argued that Jack and Alice had engaged in bad faith conduct warranting conversion. First, they argued that Jack and Alice were falsely claiming a homestead exemption in the Property when they did not live there, and had no intention of living there, when they filed their petition. The tenant at the Property on the petition date was a family of four who had lived there since 2016. At some point in 2019, Alice's son, Daniel, approached the tenants, told them that Jack and Alice were having some legal troubles, and asked if Alice could move into one of the four bedrooms at the Property with the tenants. In exchange, Alice would pay half the rent. Faced with moving out or staying with reduced rent, the tenants agreed to allow Alice to move in with them. Creditors argued that this was a "fake" attempt to make it appear as though Alice lived there so that she and Jack could claim the homestead exemption.

Alice testified that she initially paid $900 of the $1,800 monthly rent. However, in late July 2019, she asked the tenants to pay $1,000 per month beginning in August 2019. Alice testified that she moved into the Property prior to the petition date of June 6, 2019. Jack testified that Alice moved into the Property in June 2019. The tenants testified that they were not sure when Alice moved in, but they thought it was in August 2019. The tenants testified that Alice brought only a few personal items, such as toiletries, linens, clothes, and luggage. The tenants testified that Alice lived at the Property for

four months – from August 2019 through November 2019 – and that she stayed there a total of only five or six nights. A private investigator reported that, during the months of December 2019 and January 2020, he never located Alice's car at the Property. However, he did see it multiple times at Carol's home and Jack's apartment.

Creditors also cited Alice's multiple transfers of the Property between her and Carol as evidence of bad faith conduct supporting conversion. Alice's first transfer of 50% of her interest in the Property to Carol in January 2017 occurred on the eve of Creditors' filing of the complaint against Jack and Alice; the transfer of Alice's remaining 50% interest in the Property to Carol in June 2018 occurred one month after the parties had attended a case management conference in that litigation; and Carol's transfer of her 100% interest in the Property back to Alice in April 2019 occurred after Creditors sued Alice and Carol in August 2018 to set aside the alleged fraudulent transfers to Carol.

Third, Creditors cited Jack and Alice's omission and concealment of assets as evidence of bad faith conduct supporting conversion. During his Rule 2004 examination, Jack revealed that he had a secret bank account with his friend, Humphrey Shen, which was not disclosed in the initial bankruptcy schedules but was later disclosed in an amendment. Jack testified that the purpose of this account was to hide money from Alice. Mr. Shen confirmed the existence of the joint bank account and that it was used primarily by Jack. Mr. Shen also produced documents demonstrating that Jack used a credit

5

card in Mr. Shen's name to buy items at Home Depot and other construction-related stores and that the joint bank account was used to pay these bills. Creditors argued that it was reasonable to infer Mr. Shen was assisting Jack in hiding money Jack made in his construction business. Alice testified that she knew about the Shen account but that she did not know the extent to which Jack used it.[5]

Lastly, Creditors argued that the timing of the bankruptcy filing was further evidence of Jack and Alice's bad faith supporting conversion. The petition was filed on the same day as the hearing to confirm the arbitration award, which prevented entry of the judgment until Creditors got relief from stay. Creditors argued that they were the only bona fide creditor in the case; every other unsecured creditor was a family member or other close relation. Creditors questioned the veracity of the proofs of claim filed by these persons. For example, Mr. Shen said he had no memory of filing a claim, even though one for $20,000 had been filed on his behalf. Creditors argued that the clear purpose behind Jack and Alice's bankruptcy filing was to avoid paying Creditors' judgment.

Jack and Alice opposed Creditors' cross-motion. They argued that Jack's misdeeds could not be imputed to Alice and should not affect her right to continue in chapter 13. Except for the homestead exemption, they argued, Creditors had not alleged that Alice engaged in any wrongful conduct in

---

[5] The evidence established yet another secret checking account that Jack used to fund his business while in bankruptcy. About $62,000 was deposited into this account during the time it was open. Alice testified that she had no knowledge of this account.

connection with the chapter 13 case. Jack and Alice also argued that Creditors could not collaterally attack the homestead exemption, which had been allowed without objection. As for the Property transfers, Jack and Alice argued that bringing the Property back into the estate prior to the bankruptcy filing was not evidence of bad faith conduct. Finally, Jack and Alice argued that the bankruptcy case was not filed to thwart litigation. The arbitration award had been made before the filing, and entry of an order confirming the award was only a ministerial act. Jack and Alice maintained that the purpose of the filing was to stave off Creditors' filing of a judicial lien against the Property. That the filing and the hearing to confirm the award occurred on the same day, they argued, was merely coincidental.

After a hearing and further briefing, the bankruptcy court entered an order converting the case to chapter 7 for "cause" under § 1307(c), finding that Jack and Alice had filed their petition in bad faith. Alice timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.　Did the bankruptcy court abuse its discretion in converting the case to chapter 7?

2.　Did the bankruptcy court abuse its discretion by not conducting an evidentiary hearing even though the record was already closed?

////

7

**STANDARDS OF REVIEW**

We review the bankruptcy court's decision to dismiss or convert a chapter 13 case under § 1307(c) for abuse of discretion. *de la Salle v. U.S. Bank, N.A. (In re de la Salle)*, 461 B.R. 593, 601 (9th Cir. BAP 2011) (citing *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011)). The existence of bad faith is a factual determination reviewed for clear error. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1222-23 (9th Cir. 1999).

We review the bankruptcy court's decision whether to hold an evidentiary hearing for abuse of discretion. *Zurich Am. Ins. Co. v. Int'l Fibercom (In re Int'l Fibercom)*, 503 F.3d 933, 939-40 (9th Cir. 2007).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION**

**A.    The bankruptcy court did not abuse its discretion in converting the case to chapter 7.**

Section 1307(c) authorizes a party in interest to request conversion or dismissal of a chapter 13 case for "cause" and provides a non-exclusive list of grounds constituting cause. Although not specifically listed in the statute, "bad faith" is "cause" for dismissal or conversion under § 1307(c). *See In re Leavitt*, 171 F.3d at 1224 (citing cases).

Factors for determining whether a case was filed in bad faith include:

(1) whether debtors misrepresented facts in the petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed the chapter 13 petition or plan in an inequitable manner;
(2) debtors' history of filings and dismissals;
(3) whether debtors only intended to defeat state court litigation; and
(4) whether egregious behavior is present.

*Id.*; *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002). No one factor is determinative. Rather, bad faith is determined by examining the "totality of the circumstances." *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (citation omitted); *In re Ho*, 274 B.R. at 876. A finding of bad faith does not require fraudulent intent by the debtor, nor is evidence required of the debtor's ill will directed at creditors, or that the debtor was affirmatively attempting to violate the law – malfeasance is not a prerequisite to bad faith. *In re Leavitt*, 171 F.3d at 1225 (citing cases).

After applying the *Leavitt* factors and considering the totality of the circumstances, the bankruptcy court concluded that Jack and Alice filed their petition in bad faith, thereby constituting "cause" under § 1307(c). As to Alice on the first and fourth *Leavitt* factors, the court questioned the veracity of her statements that she lived at the Property on the petition date when other evidence appeared to the contrary, and it found that Alice's unexplained prepetition transfers of the Property to Carol indicated her willingness to transfer property to hinder Creditors' collection efforts. The court found that the third *Leavitt* factor also supported a bad faith finding; the bankruptcy filing was timed to avoid entry of judgment, and the amount of Creditors'

9

claim was not disputed. The second *Leavitt* factor was not implicated, since this was Alice's (and Jack's) first bankruptcy filing.

Alice argues that the bankruptcy court erred by considering the prepetition transfers of her interest in the Property to Carol and finding that they suggested bad faith. Alice cites *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339 (9th Cir. 1986), and argues that the only type of prepetition transfer that the court could have considered was a transfer where her property remained transferred at the time the bankruptcy petition was filed. Because the transfers to Carol were undone prior to the bankruptcy filing, Alice argues that they should have little or no bearing on the question of her bad faith. We disagree.

Alice's reliance on *Adeeb* is misplaced. First, *Adeeb* dealt with a denial of discharge under § 727(a)(2)(A), which requires evidence of the debtor's fraudulent intent. No such intent is required for a finding of "bad faith" under § 1307(c). *In re Leavitt*, 171 F.3d at 1224. Second, even if *Adeeb* did apply, Alice interprets its narrow holding far too broadly.

In *Adeeb*, the debtor was facing financial difficulties, and on the advice of a non-bankruptcy lawyer transferred significant assets to friends and associates for no consideration. Adeeb later met with a bankruptcy lawyer who persuaded him to come clean with his creditors and undo the transfers. Adeeb informed his creditors of the situation and began the recovery process. However, before he could recover all of the assets, some creditors filed an

10

involuntary petition against him, and then proceeded to object to his discharge under § 727(a)(2)(A).

On appeal, the Ninth Circuit Court of Appeals first interpreted the term "transferred" under § 727(a)(2)(A) to mean "transferred and remain transferred." 787 F.2d at 1344. It then went on to conclude that the type of transfers necessary for purposes of denying discharge under the statute are prepetition transfers that "remain[] transferred at the time the bankruptcy petition is filed." *Id.* at 1345. The court ultimately held that "a debtor who has disclosed his previous transfers to his creditors and is making a good faith effort to recover the property transferred **at the time an involuntary bankruptcy petition is filed** is entitled to discharge of his debts if he is otherwise qualified." *Id.* at 1346 (emphasis added).

Unlike *Adeeb*, Alice's case was a voluntary filing. We reviewed *Adeeb* in the context of a voluntary filing in *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 733-34 (9th Cir. BAP 1999), *aff'd*, 5 F. App'x 743 (9th Cir. 2001), and held that, in cases of voluntary petitions, both "disclosure and recovery" of the fraudulently transferred asset must occur before the filing. We affirmed the bankruptcy court's decision to deny discharge in *Beauchamp* under § 727(a)(2)(A), because the debtor did not recover the property prior to his bankruptcy filing and, more importantly, because he did not disclose it until a Rule 2004 examination had been scheduled. But for the scheduled Rule 2004 examination, the debtor would not have disclosed the property.

11

Although Alice recovered the Property before she and Jack filed their chapter 13 case, nothing in the record shows that she voluntarily disclosed and unwound the transfers to Creditors prior to the petition date. In fact, the record reflects that Alice's recovery of the Property from Carol was in response to Creditors' suit for fraudulent conveyance. Further, Alice did not disclose the June 2018 transfer of her remaining 50% interest in the Property to Carol in her statement of financial affairs (or any amendments), even though that transfer occurred within two years of the petition date.

Finally, "the recovery requirement under *Adeeb* means recovery for the benefit of creditors." *A & H Ins., Inc. v. Huff (In re Huff)*, BAP No. NV-13-1263-JuKiTa, 2014 WL 904537, at \*7 (9th Cir. BAP Mar. 10, 2014) (citing *Pac. W. Bank v. Johnson (In re Johnson)*, 68 B.R. 193, 199-200 (Bankr. D. Or. 1986)). It does not appear that recovery of the Property was for the benefit of creditors. After getting the Property back, Alice promptly filed for bankruptcy and claimed a $170,350 homestead exemption for it. At the time, the Property was subject to a lien of $185,000. Together, these obligations total no less than $355,350. With the value of the Property at $367,655, plus costs of sale of at least 5%, there clearly would be no value for creditors.

Accordingly, it was proper for the bankruptcy court to consider the prepetition transfers of the Property in its bad faith analysis under § 1307(c), and we see no clear error in its finding that the transfers supported a finding of bad faith. *See In re Caola*, 422 B.R. 13, 15 (Bankr. D. N.J. 2010) (court would consider chapter 13 debtor's prepetition transfer of his one-half interest in

12

property that he jointly owned with his non-debtor wife in its bad faith analysis for converting case to chapter 7 under § 1307(c)); *In re Meredith*, No. 03-34018-DOT, 2005 WL 3765473, at *3-*5 (Bankr. E.D. Va. June 20, 2005) (considering chapter 13 debtor's prepetition transfers of property as part of its bad faith analysis for converting case to chapter 7 under § 1307(c)); *see also Cook v. Cook (In re Cook),* 74 F. App'x 725, 726 n.1 (9th Cir. Aug. 6, 2003) (a chapter 13 debtor's prepetition conduct is relevant to the bad faith inquiry for filing the petition or a proposed plan) (citing cases).

Alice also argues that the bankruptcy court erred when it considered Creditors' collateral attack on her homestead exemption in its bad faith analysis. Alice argues, because the homestead exemption was allowed, the court could not consider any of her conduct surrounding it. As the bankruptcy court correctly observed, Creditors were not challenging the amount of, or Alice's entitlement to, the homestead exemption. Rather, they were challenging Alice's credibility and arguing that her deceptive behavior with respect to the Property and the homestead exemption was evidence of her bad faith under the first *Leavitt* factor.

Alice cites no relevant authority to support her argument that it was error for the bankruptcy court to consider the homestead exemption in this limited context, and we located none. Her citations to *Law v. Siegel*, 571 U.S. 415 (2014), and *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), are inapposite. This case does not involve a surcharge of, or challenge to, the homestead exemption. Here, the court only considered Alice's actions and

13

representations about the Property and related homestead exemption as probative evidence of her bad faith under § 1307(c). Case law indeed supports the court's action. *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 313 B.R. 525, 534 (1st Cir. BAP 2004), *aff'd*, 430 F.3d 474 (1st Cir. 2005), *aff'd,* 549 U.S. 365 (2007) (considering debtor's misrepresentations about his homestead exemption in deciding whether bad faith existed to deny his motion to convert his chapter 7 case to chapter 13).

Alice next argues that no bad faith was shown by the timing of the bankruptcy filing. She argues that filing for bankruptcy to prevent Creditors from recording an imminent judicial lien was a legitimate reason for filing and does not show bad faith. Whether or not legitimate, the bankruptcy court was not precluded from considering the suspect timing of the filing in making a finding of a bad faith filing under § 1307(c). *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1444-46 (9th Cir. 1986) (holding that strategic filing of a bankruptcy petition to frustrate and to impede a specific performance action in state court constitutes a bad faith filing).

In considering the third *Leavitt* factor, the bankruptcy court found that the petition, filed just 90 minutes after the state court entered an adverse oral ruling against Jack and Alice, was timed to avoid entry of Creditors' judgment. Jack and Alice admitted as much. Further, Creditors' debt was undisputed, and they were the only party asserting a claim that was not held by a family member or other close relation. The mortgage payments on the Property, which had significant equity, were current, and Jack and Alice

14

owned two parcels of land in Arizona free and clear. Given the record, we see no clear error in the bankruptcy court's finding that Jack and Alice filed their case solely to impede Creditors' collection efforts, which supported a finding of a bad faith filing.

Once the bankruptcy court found cause, it then had to consider whether conversion or dismissal was in the best interest of creditors and the estate. *In re Ho*, 274 B.R. at 877 (citing *In re Leavitt*, 171 F.3d at 1224). The court decided that converting the case to chapter 7 was in the best interest of creditors and the estate. Alice does not challenge this finding on appeal.

## B.   The bankruptcy court did not abuse its discretion by not conducting an evidentiary hearing.

Alice argues that, because there were genuine factual disputes about her entitlement to a homestead exemption, the reason for the Property transfers, and the timing of the bankruptcy filing, the bankruptcy court abused its discretion by not granting her request for an evidentiary hearing. The court did not address this issue. We disagree with Alice for several reasons.

First, there was no dispute as to Alice's entitlement to the homestead exemption; it had already been allowed without objection.[6] Second, Alice had ample opportunity to explain why the transfers to Carol occurred, but she offered none in her very brief declaration. Her counsel argued that perhaps it

---

[6] Once the case was converted, Creditors and the chapter 7 trustee objected to the homestead exemption. On May 7, 2021, the bankruptcy court entered an order sustaining their objection.

was because Carol was making the mortgage payments, but this was simply argument. No testimony from Alice or Carol was offered on this point. As for the timing of the bankruptcy filing, Jack and Alice admitted that it was done to prevent Creditors from recording a judicial lien against the Property, so this too was undisputed. Finally, Alice did not request an evidentiary hearing until after the court had already considered the parties' declarations, heard oral argument, and taken the matter under submission. The evidentiary record was closed. She then tardily requested one in her post-hearing brief.

In light of the foregoing, we find that the bankruptcy court did not abuse its discretion by denying Alice's belated request for an evidentiary hearing. Based upon the many uncontested facts, and upon the facts as found by the bankruptcy court and all reasonable inferences from those facts, a court could properly find bad faith and cause to convert under § 1307(c).

## CONCLUSION

For the reasons stated above, we AFFIRM.