**In re Patrick Leroy DULANEY, Debtor.**

**Sally J. Zeman, Appellant,**

**v.**

**Patrick Leroy Dulaney, Appellee.**

**Civ.A. No. 01–WM–921(PAC).**
**Bankruptcy No. 00 11551(DEC).**

United States District Court, D. Colorado.

Sept. 26, 2002.

---

Chad S. Caby, Chapter 13 Trustee, District of Colorado, Denver, CO, for appellant.

H. Christopher Clark, H. Christopher Clark Law Office, Boulder, CO, for appellee.

### ORDER

MILLER, District Judge.

This matter is before me on appeal of the United States Bankruptcy Court's dismissal of Appellee's Chapter 13 case. Based upon the parties' written and oral arguments and my review of the designated record, I conclude that the lower court's decision should be affirmed.[1]

---

1. At the conclusion of oral argument, I stated my ruling and ordered the parties to submit a draft opinion by August 16, 2002. The parties failed to comply with my order. I will determine whether sanctions are appropriate.

2. Adjustment of Debts of an Individual with Regular Income.

3. Monett obtained a legal malpractice judgment against Dulaney in 1990 for $62,253. According to Monett, that amount has grown, because of statutory interest, to $113,000.

*Jurisdiction*

This matter came on before the Court on the appeal of Sally J. Zeman, the Standing Chapter 13 Trustee (Trustee) from the judgment of the Honorable Donald E. Cordova, United States Bankruptcy Judge: (1) granting Appellee/Debtor Patrick Leroy Dulaney's (Dulaney) motion to dismiss his Chapter 13 petition; and (2) denying the Trustee's motion to reconsider. Judge Cordova's judgment is a final appealable judgment over which the district court has jurisdiction under 28 U.S.C. § 158(a)(1).

*Background*

On February 17, 2000, Dulaney filed a voluntary petition for relief under Chapter 13.[2] Several creditors had previously submitted claims against Dulaney, the most significant filed by John Monett (Monett) for a $113,000 judgment.[3]

On March 31, 2000, the Trustee filed a motion to dismiss the petition for failure to file a plan, make plan payments, file a motion to confirm or comply with the terms of the plan. On April 10, 2000, Dulaney filed his Chapter 13 plan.

On April 13, 2000, Monett filed a motion for relief from stay[4] asserting that Dulaney filed the Chapter 13 petition in bad faith in order to avoid a sheriff's sale of his half-interest in his homestead.[5] Monett requested that the bankruptcy court modi-

---

4. A petition filed under Chapter 13 operates as an automatic stay applicable to enforcement of any lien against the debtor's property that arose prior to commencement of the bankruptcy case. 11 U.S.C. § 362(a)(5). Under § 362(d), the court may modify or annul the stay.

5. Monett secured his judgment by placing a lien on Dulaney's Denver residence. On August 6, 1999, an appraiser valued the residence at $240,000. Dulaney and his wife each share an equal interest in the property.

fy the stay and allow the sale to proceed so that his judgment lien could be satisfied.

On May 15, 2000, and after Dulaney's response, the bankruptcy court granted Monett's motion for relief from stay finding among things that Dulaney was misusing the bankruptcy process and using the automatic stay to prevent Monett from pursuing a lien placed on the residence.[6]

On June 23, 2000, the Trustee again moved to dismiss the case since Dulaney had not paid any amount into his plan and had not filed a motion to confirm. On August 10, 2000, Dulaney moved to confirm.

On September 8, 2000, Monett filed an objection to the confirmation of the plan because it did not incorporate a suitable payment option to reduce Dulaney's debt and did not provide that the secured creditors retained their liens on the residence after the plan's confirmation. That same day, the Trustee also filed an objection to confirmation citing a variety of grounds.

On December 18, 2000, Dulaney filed an amended Chapter 13 plan that attempted to address the concerns of Monett and the Trustee. On January 17, 2001, Dulaney moved to confirm his amended Chapter 13 plan.

On January 22, 2001, the Trustee again filed an objection to confirmation contending that the plan and plan analysis were inconsistent, Dulaney did not accurately itemize his expenses and he did not include his state tax information.

On January 31, 2001, Monett again filed an objection to confirmation asserting for the second time that the plan did not incorporate a suitable payment option that would significantly reduce Dulaney's six figure debt.

On April 11, 2001, the bankruptcy court held a hearing on Dulaney's motion to confirm. The parties spoke to the issues of state and federal tax liability, the lien on Dulaney's residence, what a proper payment option would look like and whether Dulaney was using the bankruptcy process to delay debt service. The court found that Dulaney's plan was not confirmable since it failed to provide for the Debtor's federal tax liability. The Trustee then moved to convert the case to Chapter 7. The court thereafter scheduled a hearing on the Trustee's motion for April 25, 2001.

On April 16, 2001, Monett joined the Trustee's motion asserting conversion served the best interests of both the estate and the creditors since Dulaney had unreasonably delayed the case, the court had denied the plan's confirmation and Dulaney had failed to create a workable plan.

On April 20, 2001, Dulaney moved to dismiss pursuant to 11 U.S.C. § 1307(b) stating that since his Chapter 13 petition had never been converted from Chapter 7 or 11 he had an absolute right to dismissal.

On April 23, 2001, Monett filed an objection to Dulaney's motion to dismiss asserting that Dulaney had not diligently prosecuted his bankruptcy case; it served the creditors' best interests to convert to Chapter 7 in order to liquidate the Debtor's assets.[7]

On the same day, the court, without seeing Monett's objection, ordered dismissal of Dulaney's Chapter 13 case finding that the Debtor requested dismissal pursuant to 11 U.S.C. § 1307(b), no plan had been confirmed and no request for

---

6. Monett thereafter scheduled a sheriff's sale for approximately six different occasions but could not locate a buyer for Dulaney's half residential interest.

7. The Chapter 7 Trustee may liquidate a debtor's homestead interest.

delayed revestment of property of the estate had been made.

On May 1, 2001, the Trustee filed a motion to reconsider arguing the equity of conversion given the case's age and Dulaney's delay tactics.

On May 7, 2001, the court combined the Trustee's motion with Monett's objection, treated them as a single motion to alter or amend judgment under Fed.R.Civ.P. 59(e) and thereafter concluded that a debtor has an absolute right to dismissal of a Chapter 13 case following a motion to dismiss pursuant to § 1307(b).

On May 17, 2001, the Trustee filed notice of appeal.

### Standard of Review

The district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Fed.R.Bankr.P. 8013. The issues presented are legal which are subject to a *de novo* review. *In re Blehm Land & Cattle Co.*, 859 F.2d 137, 138 (10th Cir.1988).

### Discussion

The Trustee asserts two points of error: (1) whether the bankruptcy court erred in its order dismissing the Chapter 13 case prior to confirmation of plan, in light of the Trustee's and Monett's pending requests for conversion to Chapter 7; and (2) whether the bankruptcy court erred when it denied the Trustee's motion to reconsider the order dismissing the Chapter 13 case.

Both points present the same issue: whether 11 U.S.C. § 1307(b) grants a debtor an absolute right to have a Chapter 13 case dismissed or whether such right is modified when the debtor moves to dismiss in the face of a pending 11 U.S.C. § 1307(c) motion to convert to Chapter 7.

11 U.S.C. § 1307(b) reads:

On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(c) reads in relevant part:

on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of the creditors and the estate, for cause.

The Trustee argues that the mandatory dismissal language of § 1307(b) is not controlling when there is a pending § 1307(c) motion to convert to Chapter 7; in such instance, a court must consider both motions and cannot automatically grant the motion to dismiss. Otherwise, an absolute right to dismissal would allow a debtor, as here, to file a Chapter 13 case, receive protection from the automatic stay, delay confirmation and then move to dismiss the case when another party moves to convert to Chapter 7. The Trustee further suggests that, at the very least, § 1307(b) does not grant an absolute right to dismissal when the pending § 1307(c) motion to convert alleges bad faith, abuse of process or undue delay.

Dulaney argues that the language of § 1307(b) is clear—a debtor has an absolute right to dismissal at any time.

In analyzing the issue presented here, I shall resort to the traditional tools of statutory interpretation: language, legislative history and purpose.

## Plain Language

The statutes' language unequivocally and unconditionally demonstrates that a debtor has an absolute right to dismissal. § 1307(b) plainly states that upon request by the debtor at any time the court shall dismiss a Chapter 13 case. The only limitation on this right, as spelled out in the statute, provides that a court cannot dismiss a case if it had been converted from Chapter 7 or 11, a provision that simply prevents a debtor from returning to a chapter previously occupied. *In re Harper–Elder*, 184 B.R. 403, 406 (Bankr. D.D.C.1995).

§ 1307(c), on the other hand, states that a court may convert a case to Chapter 7; the section speaks in the permissive. "When the same provision uses both 'may' and 'shall' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." *In re Barbieri*, 199 F.3d 616, 620 (2nd Cir.1999) (citing *Anderson v. Yungkau*, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947)). When a court is presented with competing § 1307(b) and § 1307(c) motions the normal usage of the words should control; the court must dismiss the Chapter 13 case.

## Legislative History

If the statute's language does not plainly reveal the legislature's meaning, a court must next look to the legislative history. *Toibb v. Radloff*, 501 U.S. 157, 161–63, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Here, the congressional reports explicitly affirm that a debtor retains an absolute right to dismissal under § 1307(b). "Subsection (b) requires the court, on request of the debtor, to dismiss the case if the case has not already been converted from Chapter 7 or 11." H.Rep. 95–595, 95th Cong., 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5963. § 1307(b) confirms "without qualification, the rights of a Chapter 13 debtor to…have the Chapter 13 case dismissed." S.Rep. 95–989, 95th Cong., 2nd Sess. (1978), U.S.Code Cong. & Admin.News, p. 5787.

## The Purpose of Chapter 13

In addition to language and history, a court may also examine a statute's purpose to ascertain legislative intent. *Crandon v. United States*, 494 U.S. 152, 156–58, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Chapter 13 was intended to be a voluntary chapter; 11 U.S.C. § 303(a) states an involuntary case may be commenced only under Chapter 7 or 11. *In re Harper–Elder*, 184 B.R. at 408. The effect of voluntarily electing Chapter 13 provides a debtor with the ability to restructure finances without facing liquidation. *Id.* Since the purpose of Chapter 13 is to encourage voluntary petitions, that policy is served by preserving the debtor's right to dismissal in the face of a competing motion to convert to Chapter 7. *In re Hearn*, 18 B.R. 605, 606 (Bankr.D.Neb. 1982).

## Further Considerations

In addition, while it is true, as the Trustee notes, that affirming a debtor's absolute right to dismissal would, in certain circumstances, render § 1307(c) nugatory, the alternative finding would render the mandatory language of § 1307(b) without effect. It is therefore clear that in the event of competing motions filed under these two sections, "one subsection will inevitably prevail at the expense of rendering the other subsection a nullity." *In re Patton*, 209 B.R. 98, 100 (Bankr.E.D.Tenn.1997). As such, the Trustee's assertion that an absolute right under § 1307(b) would nullify § 1307(c) "carries no weight since either party could make the same argument." *Id.* at 104.

Finally, although an absolute right to dismissal may enable a debtor to misuse

the bankruptcy system, a bankruptcy court has the power to remedy such misuse appropriately. For example, a court may take necessary steps under 11 U.S.C. § 105(a) to prevent an abuse of process. Moreover, pursuant to Fed.R.Bankr.P. 9011(c), sanctions may be imposed in the appropriate case.[8] Finally, a court, as here, may modify or annul the Chapter 13 automatic stay thereby allowing creditors to pursue their claims in state court during the course of the bankruptcy case.

*Conclusion*

I find that the language, history and purpose of 11 U.S.C. § 1307(b) are clear: a Chapter 13 debtor has the absolute right to the case's dismissal at any time unless the case had previously been converted from Chapter 7 or 11.

Accordingly, it is ordered that the decision of the bankruptcy court is affirmed and this appeal is dismissed.

---

**8.** This rule tracks the language of Fed. R.Civ.P. 11 and, for example, would allow sanctions for undue delay or harassment.