NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1364-LsTaL |
| CHARLES W. BARTLETT, | Bk. No. 9:17-bk-11606-DS |
| Debtor. | |
| SARIS REALTY, INC., a CALIFORNIA CORPORATION, dba LAWYERS REALTY GROUP, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| CHARLES W. BARTLETT; ELIZABETH F. ROJAS, Chapter 13 Trustee, | |
| Appellees. | |

Submitted Without Argument on June 21, 2018

Filed - July 18, 2018

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

————

Appearances:     Derik N. Lewis of Vantis Law Firm, APC, on brief for Appellant

————

Before: Lastreto,[**] Taylor, and Lafferty, Bankruptcy Judges.

## INTRODUCTION

We encounter in this case the discord between a debtor's right to dismiss an unconverted chapter 13 case under 11 U.S.C. § 1307(b)[1] and our circuit's condition on that right: the absence of a debtor's bad faith or abuse of process. Here, a creditor appeals the bankruptcy court's order dismissing a chapter 13 case without prejudice over that creditor's objection and before hearing that creditor's motion to convert the case to chapter 7. After examining the present viability of our circuit's condition on the debtor's dismissal right under § 1307(b) and based on the record, we find neither an abuse of discretion nor

———

[**] Honorable René Lastreto II, Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

2

error. We therefore AFFIRM.

## FACTS

### Prepetition Events

Charles W. Bartlett and his wife, Sandra, as trustees of the Bartlett Family Trust, owned a residence in Westlake Village in Ventura County, California.[2] After buying it in 2000, they refinanced four times between 2003 and 2006. The Bartletts received substantial cash from these efforts, as did many homeowners with appreciating properties during the "real estate boom."

The Bartletts' fortunes changed between 2012 and 2015; they frequently approached Wells Fargo about mortgage relief. The Bartletts were repeatedly told they would not qualify for a loan modification. In July 2013, the Bartletts filed a lawsuit against Wells Fargo. The lawsuit was dismissed by the Bartletts in June 2014 after Wells Fargo filed a Motion for Summary Judgment.

The Bartletts turned to the bankruptcy court for relief five times between 1996 and 2017. Their first case, a chapter 7, resulted in a discharge; in 2008, they filed their second chapter 7 case also resulting in a discharge. In July 2011, Sandra filed a chapter 13 case which was dismissed two months later. The Bartletts filed a joint chapter 13 case later that year, but that case was dismissed in February 2012. In 2013, they filed another chapter 13 case which

---

[2] For ease of reference, we will refer to Charles W. Bartlett as "Charles" and Sandra Bartlett as "Sandra." No disrespect is intended.

was dismissed a few months later.

On January 29, 2016, the Bartletts signed a Residential Listing Agreement with Saris Realty, Inc., dba Lawyers Realty Group ("Saris").[3] Unsuccessful in negotiating a loan modification with Wells Fargo, the Bartletts hired Saris to assist them in a "short sale."[4] Saris found a buyer but the Bartletts did not complete the sale. Saris filed a lawsuit in the Ventura County Superior Court against the Bartletts and their trust, alleging breach of the listing agreement. In October 2016, the Bartletts filed a cross-complaint against Saris, and others, alleging that beginning in May of 2015 they received solicitations from Saris, the "Vantis Law Firm" and attorney Derik Lewis advertising pro bono loan modification services. The Bartletts alleged that Cross-Defendants took advantage of Charles' failing health, did not work to achieve a loan modification with Wells Fargo, and had always intended to profit by achieving a short sale of the Bartletts' residence ("Saris litigation").

Meanwhile, Wells Fargo was marching on to foreclosure. It recorded a notice of default on November 9, 2016 and a notice of sale in May 2017. A

---

[3] We exercise discretion to review the bankruptcy court docket when faced with a limited record. *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). We also review the images of the documents attached to the docket. *O'Rourke v. Seaboard Surety Co. (In re Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[4] A "short sale" is a sale of an encumbered property for less than the balance owed on the loan secured by the property.

Trustee's Sale was scheduled for June 6, 2017. For reasons that are unclear from the record, the sale date was postponed to November 9, 2017.

Charles' deposition was set in the progressing Saris litigation. Charles abruptly aborted that deposition and "stormed out." That deposition was rescheduled for September 5, 2017. But, that deposition did not resume as Charles filed this bankruptcy case on that same date.

**Post Petition Events**

Charles' schedules identified the previous bankruptcies in which he was a joint debtor.[5] He scheduled the Westlake Village residence as having a $750,000.00 value encumbered by two deeds of trust: one in favor of Wells Fargo securing $706,000.00 and a second deed of trust securing $5,500.00; his ownership in two vehicles, and miscellaneous items. He also scheduled Sandra's IRA and a claim against his former counsel, presumably in the Wells Fargo litigation, as having zero value.

Charles further disclosed the Saris litigation and listed Saris and the Vantis Law Firm as having disputed claims for real estate commissions. Curiously, he also listed the Saris claim as undisputed. No other creditors with unsecured claims were listed on the schedules.

As to income, Charles claimed that he only received disability income and SSA benefits since 2015 and disclosed that Sandra received "1099

---

[5] Charles' schedules did not list the chapter 13 case Sandra filed in July 2011.

5

employee income" of $600.00 per month.

Charles filed a chapter 13 plan with the petition. This plan proposed that as to Wells Fargo's secured claim, Charles would submit a loan modification and/or file a lawsuit against Wells Fargo. Wells Fargo filed an objection to confirmation of the plan. In its objection, Wells Fargo alleged its loan was delinquent for 109 months (January 2009 - August 2017) and that the plan was not feasible or in compliance with § 1322 because the plan neither cured the outstanding arrearage owed Wells Fargo nor were there sufficient funds in Charles' budget to cure the arrearage as required by law.

On October 19, 2017, Wells Fargo filed a Motion for Relief from the automatic stay. In the motion, Wells Fargo alleged that Charles' bankruptcy case was a bad faith filing, that there were multiple filings affecting its collateral, and that Charles had made no post-petition mortgage payments. Wells Fargo asked for "in rem relief" under § 362(d)(4).[6] On November 9, 2017, Saris filed an objection to Charles' claim of exemptions. In its objection, Saris raised Charles' numerous bankruptcy filings and described the Saris litigation. Saris also alleged the Wells Fargo loan was in substantial default and that Charles had purposely understated the debt owed Wells Fargo to deceive the court into believing that there was existing equity in the Bartlett

---

[6] The hearing on this motion was originally scheduled for November 9, 2017 but was continued to December 20, 2017, and then continued again to January 4, 2018. Seven days later, the bankruptcy court entered an order granting the motion and giving Wells Fargo relief under § 362(d)(4).

residence. Plus, Saris mentioned its intention to file a motion to compel conversion of the chapter 13 case to chapter 7 for Charles' alleged bad faith "pre and post petition."

Two days later, Charles filed an amended chapter 13 plan modifying Wells Fargo's treatment. Now, Charles proposed to surrender the residence since, after deductions for cost of sale and real estate commission, there was no equity in the residence. Two days later, the chapter 13 trustee filed an objection to confirmation of the plan. The trustee (referencing Charles' initial chapter 13 plan), raised several issues including that plan's failure to cure the substantial Wells Fargo arrearage. The hearings on confirmation of the plan, the trustee's objection and Saris' exemption objection were scheduled for November 30, 2017 ("confirmation hearing").

Seven days before the confirmation hearing, Saris filed a motion to compel conversion of the chapter 13 case to chapter 7 and for sanctions. The hearing was scheduled for December 21, 2017 ("Conversion Motion"). The Conversion Motion raised bad faith as cause for conversion under § 1307(c). Saris supported the bad faith allegation with five facts: (1) the numerous cases Charles filed before this case; (2) the failure of Charles to list as assets businesses identified by the California Department of Real Estate as operated under his real estate broker's license; (3) Charles' alleged failure to list values for various assets (i.e., electronics; monies on deposit; claims against third parties and income from alleged unlisted businesses); (4) understating

7

liabilities in the schedules (i.e., the amount of Wells Fargo's secured claim and Saris' unsecured claim of $35,700.00 which was alleged in the complaint in the Saris litigation); and (5) that Charles filed the chapter 13 case to avoid the Saris litigation. The Conversion Motion was supported by attorney Derik Lewis' declaration in which he described (and attached) various documents including a property detail showing the numerous mortgages the Bartletts had negotiated, their attempts to refinance or obtain mortgage relief, and a listing from the Department of Real Estate's website showing various "dba's" connected with Charles' real estate brokers license.[7]

The confirmation hearing was held November 30, 2017. At the hearing, Charles' counsel asked for a "straight dismissal" because Charles just had a surgical procedure and he had no plan payment. Saris' counsel objected telling the court that the Conversion Motion was pending, and that Saris believed there were significant assets that would "assist the creditors." After both counsel briefly argued, the court acknowledged Saris's pending objection to exemption and the many cases previously filed in the history of the debtor, and that this case was not a "typical serial filer situation." The court also stated: "I don't see that conversion, even though that's not before the court today, would be in the interests of creditors based on the record that I have in

---

[7] Ex. 5 to the Conversion Motion is a list purportedly from the Department of Real Estate that Saris retrieved from the department's website showing four active dba's connected with Charles' license. It also showed that Sandra was a real estate sales person with an active license.

front of me." Saris' counsel again raised the "hidden multiple real estate businesses" which Charles did not disclose on his bankruptcy schedules. The bankruptcy court again acknowledged its awareness of the fraud allegations made in the objection to the exemptions, but that the court "just didn't see much evidence in support of that." The court then announced that the case would be dismissed without prejudice but that "[if] creditor [Saris] wants to seek some sort of relief from that order he (sic) can look into what's available." The court then announced that the case would be dismissed without prejudice.

On December 1, 2017, the court issued a written order dismissing the bankruptcy case and ordering that "the court retain jurisdiction on all issues involving sanctions, any bar against being a debtor in bankruptcy, all issues arising under bankruptcy code §§ 105, 109(g), 110, 329, 349, and 362, and to any additional extent provided by law." This timely appeal followed.[8]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court abused its discretion in dismissing the bankruptcy case without prejudice.

---

[8] Neither Charles nor the chapter 13 trustee have participated in this appeal.

Whether the bankruptcy court erred in not holding a hearing on Saris' Conversion Motion.

**STANDARD OF REVIEW**

We review the bankruptcy court's decision to dismiss a case or an order regarding conversion of a case for abuse of discretion. *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999); *Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011) (dismissal); *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 (9th Cir. 2008); *Levesque v. Shapiro (In re Levesque)*, 473 B.R. 331, 335 (9th Cir. BAP 2012) (conversion).

We review a bankruptcy court's decision whether to hold a hearing "for an abuse of discretion." *Zurich America Ins. Co. v. Int'l Fibercom Inc. (In re Int'l Fibercom Inc.)*, 503 F.3d 933, 939-40 (9th Cir. 2007). But whether or not the bankruptcy court should have exercised its discretion presents a legal question which is subject to de novo review. *Nady v. DeFrantz (In re DeFrantz)*, 454 B.R. 108, 112 (9th Cir. BAP 2011).

We apply a two part test to determine whether the bankruptcy court abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *Id.* Second, we examine the bankruptcy court's factual findings for clear error. *Id.* at 1262 and n. 20. We must affirm the bankruptcy court's factual findings unless we determine those findings "(1) 'illogical,' (2) 'implausible,' or (3) 'without

10

support in inferences that may be drawn from the facts in the record.'" *Id.*

De novo review requires that the matter be considered anew, as if it had not been heard before, and as if no decision had yet been rendered. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988). When this Panel undertakes de novo review, the case is viewed from the same position as it was in the bankruptcy court. *See Ka Makani 'O Kohala Ohana Inc. v. Dept. of Water Supply*, 295 F.3d 955, 959 (9th Cir. 2002).

Bad faith is a factual finding reviewed for clear error. *In re Leavitt*, 171 F. 3d at 1222-23.

We may affirm on any grounds supported by the record. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

**1. The bankruptcy court applied the correct legal standard in dismissing the case without prejudice.**

Section 1307(b) provides as follows:

> (b) On request of the debtor **at any time**, if the case has not been converted under section 706, 1102, 1208 of [Title 11], the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable (emphasis added).

In the Ninth Circuit, a debtor's right of voluntary dismissal under

11

§ 1307(b) is not absolute. *Rosson*, 545 F.3d at 773-74. In *Rosson*, the Ninth Circuit reasoned that in light of *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), and the authority of the court under § 105(a), the right of the debtor to voluntarily dismiss a chapter 13 case is qualified by the authority of the bankruptcy court to deny dismissal on grounds of bad faith conduct or "to prevent an abuse of process." *Rosson*, 545 F.3d at 773-74. In *Marrama*, a majority of the Supreme Court limited a chapter 7 debtor's right to convert to chapter 13 after engaging in bad faith conduct. *See Marrama*, 549 U.S. at 373-74. But, seven years later in *Law v. Siegel*, 134 S. Ct. 1188, 1196 (2014), a unanimous Supreme Court reversed the Ninth Circuit and held that § 105 and other provisions of the Bankruptcy Code did not expressly permit a debtor's exempt property to be used to pay debts and expenses even when the debtor engaged in bad faith conduct. In *Law*, the Supreme Court distinguished *Marrama* because in *Marrama*, the court reasoned that § 706(d) expressly conditioned conversion on a debtor's qualifications for relief under chapter 13. The disqualifying conduct of a debtor in the chapter 7 case could prevent him from qualifying as a debtor under chapter 13. *See Law*, 134 S. Ct. at 1197; *Marrama*, 549 U.S. at 372-75.

Since *Law v. Siegel*, the continued vitality of *Rosson* has its allies and opponents. The Ninth Circuit has not directly reaffirmed *Rosson* post-*Law*; though one Ninth Circuit bankruptcy court has. *See In re Brown*, 547 B.R. 846 (Bankr. S.D. Cal. 2016). In *Brown,* the bankruptcy court held that the debtor

did not have an absolute right of dismissal under § 1307(b). *Id.* at 851. That court reasoned that "[r]ather than undercutting *Rosson*'s analysis, *Law* actually confirms it." *Id*. The court found that *Marrama's* rejection of a debtor's right to convert was based on a "holistic" interpretation of §§ 706(a), 706(d), and 1307(c) (citing to a selection of text from *Law* summarizing the holding and reasoning of *Marrama*). *Id.* at 851-52. The bankruptcy court in *Brown* explained:

> *Law* clarified the reasoning of *Manama* [sic] was that "if the case had been converted to Chapter 13, § 1307(c) would have required it to be either dismissed or reconverted to Chapter 7 in light of the debtor's bad faith. *Law*, 134 S. Ct. at 1197.The limited utility of § 105 was to authorize a bankruptcy court to deny debtors their right to convert a Chapter 7 case to Chapter 13, where the debtors would not be qualified debtors under § 706(d). *Law*, 134 S. Ct. at 1197. Hence, § 105 could be used to avoid the "futile procedural niceties in order to reach more expeditiously an end result required by the Code."

*Id.* at 852, citing *Law v. Siegel*, 134 S. Ct. 1188, 1197 (2014).

The "procedural nicety" in *Brown* was that though the court ruled that the case should be converted, the court had not yet entered the final order. Before the final order was entered, Mr. Brown's counsel requested that the case be dismissed under § 1307(b) instead of converted under § 1307(c). *Brown,* 547 B.R. at 852.

The Bankruptcy Court for the Western District of Texas sided with *Brown* for nearly identical reasons, holding that there is a bad faith exception

13

to a debtor's right to dismiss a chapter 13 case. *In re Pustejovsky*, 577 B.R. 671 (Bankr. W.D. Tex. 2017). The court stated that "[i]nterpreting the word *shall* as mandatory in § 1307(b), without a bad faith exception, would create absurd results because sections of the Code must be read together and harmonized." *Id.* at 674. An absolute right to dismiss in § 1307(b) would render § 1307 (c) meaningless. *Id.* at 674-75 (citing *Foster v. N. Tex. Prod. Credit Ass'n (In re Foster)*, 121 B.R. 961, 961 (N.D. Tex. 1990)(chapter 12 case)).

Other courts differ. The Bankruptcy Court for the District of Colorado contradicts *Brown*, "concluding the debtor could voluntarily dismiss her case after a motion to convert was filed." *In re Sinischo*, 561 B.R. 176, 186 (Bankr. D. Colo. 2016), citing *In re Mills*, 539 B.R. 879, 884 (Bankr. D. Kan. 2015). The Bankruptcy Court for the District of Colorado also held that a chapter 13 debtor, post *Law v. Siegel*, has an absolute right to dismiss his or her bankruptcy case. *In re Sinischo*, 561 B.R. at 191. In reaching this decision, that court examined a pre-BAPCPA **and** pre-*Marrama* case (*Zeman v. Dulaney (In re Dulaney)*, 285 B.R. 10 (D. Colo. 2002)), a post-*Marrama*/pre-*Law* case, (*In re Williams*, 435 B.R. 552 (Bankr. N.D. Ill. 2010)), and a post-*Law* case *(Ross v. AmeriChoice Fed. Credit Union)*, 530 B.R. 277 (E.D. Penn. 2015)). These cases all relied on the differences between the permissiveness of the word "may" and the strictness of "shall" in §§ 706(a), 1307(b) and 1307(c). *See In re Dulaney*, 285 B.R. at 14; *In re Williams*, 435 B.R. at 555-59; *AmeriChoice*, 530 B.R. at 283-86. These courts reasoned that the "plain language" of § 1307(b) required them

14

to dismiss the case "at any time," before conversion, on the request of the debtor. *See Dulaney*, 285 B.R. at 15; *Williams*, 435 B.R. at 560; *AmeriChoice*, 530 B.R. at 287. In contrast, these courts concluded that § 706(a) states that the debtor "may" convert at any time (unless the case has previously been converted) and § 1307(c) states that the court "may" convert or dismiss under § 1307(c), whichever is in the best interests of creditors and the estate, after notice and a hearing. *See §§ 706(a), 1307(b), 1307(c); Dulaney*, 285 B.R. at 14; *Williams*, 435 B.R. at 560; *AmeriChoice,* 530 B.R. at 287.

We need not consider the continued sturdiness of *Rosson*. The record does not support Saris' argument that the bankruptcy court ignored *Rosson* and dismissed the case without prejudice solely on the debtor's oral motion at the confirmation hearing.[9] Here, the bankruptcy court had a substantial record. The court also analyzed that record at the confirmation hearing where

---

[9] Rule 1017(f)(2) provides that "[c]onversion or dismissal under . . . 1307(b) shall be on motion filed and served as required by Rule 9013." Rule 9013 provides in part: "[a] request for an order . . . shall be by written motion, **unless made during a hearing**" (emphasis added). The debtor's request for dismissal here was made during a confirmation hearing so, technically, the motion was in conformance with both Rules 1017 and 9013. Yet in a curious twist, the local rules of the Bankruptcy Court for the Central District of California ("LBR") provide that the debtor **may** seek dismissal by filing a request for voluntary dismissal which may be ruled on without hearing. LBR 3015-1(q)(1)(A) (emphasis added). Arguably, the only reason for a motion requirement for dismissal on a debtor's request under § 1307(b) is for the court to determine whether the chapter 13 case was converted from another chapter. That argument was not raised in this appeal and we do not reach that issue.

Saris was represented and participated.[10] In addition to reviewing the record, the court applied the analysis of whether conversion or dismissal was in the best interest of creditors. We are convinced the court did not ignore *Rosson* and considered the evidence before it. The court identified the correct legal rule and applied it to the issues raised.

**2. The court made the necessary factual findings.**

Bad faith is a "cause" for dismissal under § 1307(c). *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994). In this circuit, bankruptcy courts make good faith determinations on a case-by-case basis, after considering the totality of the circumstances. *Leavitt*, 171 F.3d at 1224. The "*Leavitt* factors" that inform a decision whether to dismiss or convert a case for bad faith are: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the bankruptcy code, or otherwise filed his chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *Id* (citations omitted). In addition, a "court must make its good-faith determination in the light of **all** militating factors." *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 877 (9th Cir. BAP 2002) (citing *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982)). "The bankruptcy court is not required to find that each *[Leavitt]* factor is satisfied or even to

---

[10] Some grounds for conversion asserted by Saris in the bankruptcy court were not mentioned at the confirmation hearing. We will discuss those below.

16

weigh each factor equally." *Khan v. Barton (In re Khan)*, 523 B.R. 175, 185 (9th Cir. BAP 2014). Rather, "[t]he *Leavitt* factors are simply tools that the bankruptcy court employs in considering the totality of the circumstances." *Id.*

Saris vigorously argues that it had established bad faith to the bankruptcy court in support of its Conversion Motion. Saris argues that Charles' numerous bankruptcy cases; failure to list businesses in his schedules that he had registered with the California Department of Real Estate; alleged undervaluation of assets and understatement of liabilities, plus the timing of the petition filing supported a finding of "bad faith" warranting conversion of the case to chapter 7. Saris contends that the bankruptcy court failed to make findings on bad faith because the bankruptcy court did not hold a hearing on Saris' Conversion Motion.

Saris' premise is flawed. When the court held the confirmation hearing, the court acknowledged the record before it containing the facts which Saris claims support a finding of bad faith. Wells Fargo had filed an objection to confirmation of the plan, stating, in part that its loan was in default for 109 months. Over one month before the confirmation hearing, Wells Fargo filed a motion for relief from the automatic stay, in which it raised the debtor's bad faith and the multiple filings affecting its collateral. The chapter 13 trustee had objected to confirmation, raising several issues, including Wells Fargo's

17

treatment under the proposed plan.[11] The court also had the debtor's schedules which showed the existing litigation and claims Saris asserted. Saris' own objection to exemptions mentioned Saris' intention to file the Conversion Motion. The objection itself raised the numerous filings and described the Saris v. Bartlett litigation. The objection also alleged substantial defaults and that Charles allegedly purposely understated debt to deceive the court into believing there was existing equity.

At the confirmation hearing, the bankruptcy court noted on the record that it had considered the number of cases Charles filed and found that Charles' situation did not "seem to be the typical serial filers situation." The court also acknowledged the allegations of Charles' fraud in the objections to exemptions. In light of the record before the bankruptcy court, it noted that the court "didn't see much evidence in support of that."

Saris' argument that the bankruptcy court erred by not making findings of fact and conclusions of law regarding bad faith and specifically concerning Charles' failure to list various "dba's" found in the California Department of Real Estate website does not persuade us that the court abused its discretion. Although Rule 7052 requires the bankruptcy court to make findings and conclusions in contested matters, the failure to do so does not necessarily require remand if the record supports the bankruptcy court's ruling. We may

---

[11] As stated earlier it appears the original plan was amended.

18

consider any issues supported by the record and may affirm on any basis supported by the record, even where the issue was not expressly considered by the bankruptcy court. *Fernandez v. GE Capital Mortgage Services Inc. (In re Fernandez)*, 227 B.R. 174, 177 (9th Cir. BAP 1998), *aff'd,* 208 F.3d 220 (9th Cir. 2000) (citing *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) and *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985)). The bankruptcy court has the discretion to weigh the various "*Leavitt* factors" when determining bad faith. Saris' disagreement with the bankruptcy court's consideration of those factors does not mean the court abused its discretion. We do not find the bankruptcy court's findings to be illogical, implausible, or without support in the record.

The "two step analysis" the court engaged in before ruling that the case should be dismissed without prejudice further supports our conclusion. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *De la Salle v. U.S. Bank, N.A. (In re De la Salle)*, 461 B.R. 593, 605 (9th Cir. BAP 2011) quoting *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006). If we assume Saris and the record before the court had established bad faith, the court went through the proper two step analysis. The schedules here show no unsecured creditors, except Saris and its counsel listed as having disputed claims. The other creditors were secured by Charles' real estate. Saris claims

19

there may have been other creditors but provided the bankruptcy court with no supporting evidence. Saris did not provide any evidence of how the creditor's best interests would be served with the appointment of a trustee in a chapter 7 case. Appointment of a chapter 7 trustee to administer a chapter 7 estate for the benefit of essentially one creditor is inconsistent with the purpose of chapter 7.

We recognize that another interpretation of the evidence Saris provided may lead to a conclusion that conversion was in the best interest of the estate. On this record, we do not find the court abused its discretion. Under the "clear error" standard "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985). We discern no clear error.

**3. The bankruptcy court did not err in not hearing the Conversion Motion.**

Even if we apply a de novo standard because the bankruptcy court did not exercise its discretion and hold a hearing on Saris' Conversion Motion under *DeFrantz,* 454 B.R. at 112, the bankruptcy court's decision is supported by the record.

First, the only evidence which the court did not state on the record it had considered at the confirmation hearing, was the alleged "dba's" which were not listed on Charles' bankruptcy schedules. The source of that evidence was license information Saris had taken from the California Bureau of Real Estate's website. Assuming the evidence was properly authenticated (Federal Rule of

Evidence 901(b)(7)) and not excluded hearsay (Fed. R. Evid. 803(8)), it does not establish that any creditors would benefit by conversion of the case. The evidence shows that there are four "active" dba's under Charles' real estate brokers license. The fact the "dba's" are "active" does not mean there are any assets in those businesses or that they were even operating at the time of the filing of the petition. Even with a lack of explicit findings, we have discretion to review the record when the record is sufficient for us to determine the relevant facts. *Moen v. Hull (In re Hull),* 251 B.R. 726, 731 (9th Cir. BAP 2000) (citing *Gardenhire v. IRS (In re Gardenhire),* 220 B.R. 376, 380 (9th Cir. BAP 1998) *reversed on other grounds,* 209 F.3d 1145 (9th Cir. 2000)). Assuming we are required to look at the court's decision anew, the evidence does not support the conclusion that the bankruptcy court erred.

Second, even if we agreed with Saris that a hearing on Saris' Conversion Motion was preferable, we fail to see how Saris was prejudiced. Saris stresses that under *Rosson* where the decision to convert the case happened at a hearing on debtor's counsel's motion to withdraw, the debtor there claimed no "meaningful opportunity" to be heard. *Rosson*, 545 F.3d at 775. In *Rosson*, the Ninth Circuit states: "[b]ecause there is no reason to think that, given appropriate notice and a hearing, Rosson would have said anything that could have made a difference, Rosson was not prejudiced by any procedural deficiency." *Id.* at 777. We do not see how Saris was prejudiced when the bankruptcy court had the record before it when it determined that the best

21

interests of the creditors was served by dismissal.

Saris argues that dismissal was "what the debtor want[ed]" and that dismissal would further debtor's "scheme to abuse the bankruptcy system" and the debtor would be "free of the consequences" of filing his petition "while he reaped the benefits of the automatic stay . . . ." We disagree.

First, the bankruptcy court had all of the evidence before it at the confirmation hearing. The bankruptcy court was persuaded there was "cause" for dismissal. As we stated, the germane inquiry is whether dismissal or conversion benefits the creditors and the bankruptcy court found dismissal was of more benefit. We do not believe that finding is illogical, implausible, or unsupported.

Second, Saris' premise that the debtor was free of consequences by the dismissal is mistaken. Wells Fargo filed a Motion for Relief from the automatic stay which was pending when the bankruptcy court dismissed the case after Charles' counsel's request. Section 109(g)(2) barred the debtor from refiling for 180 days. Also, under § 362(c)(3), another filing by the debtor within one year results in termination of the automatic stay by operation of law thirty days after the subsequent filing unless a party in interest can establish by "clear and convincing evidence" the subsequent filing is in good faith. *See* § 362(c)(3)(B). Saris also has other remedies including a Rule 9011 motion, if there is a subsequent filing.

Third, the dismissal order appealed from specifically reserves

jurisdiction in the bankruptcy court to hear further matters under § 105 or "all issues involving. . .any bar against being a debtor in bankruptcy."

Finally, we are not convinced the court erred in not imposing the severe dismissal with prejudice sanction. Dismissal with prejudice bars further bankruptcy proceedings between the parties and is a complete adjudication of the issues. *Leavitt,* 171 F.3d at 1223-24 citing *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 936-37 (4th Cir. 1997). It should rarely be applied since its effect is preventing a discharge of debts. This usually requires proof of a debtor's commission of one or more offenses listed in § 727(a). But the debtor has the procedural protections of an adversary proceeding in that case. *See* Rules 4004 and 7001. So, this "severe sanction" is limited to "extreme situations." *Tomlin,* 105 F.3d at 937. The court in *Leavitt* rejected a creditor's contention that a debtor's use "of the bankruptcy system to 'stubbornly, persistently, and wrongfully thwart creditors'" was "without foundation in law." *Leavitt*, 171 F.3d at 1224. Saris' contentions here are similarly unsupported.

In short, we discern no error.

## CONCLUSION

For the foregoing reasons, we AFFIRM.